A95A2218. HOWARD v. THE STATE.
A95A2219. CROMARTIE v. THE STATE.
(469 SE2d 396)

RUFFIN, Judge.

Gregory B. Howard and his co-defendant, Roderick Cromartie, were both convicted of rape.[1] Both appeal the judgment of conviction, and Cromartie appeals the denial of his motion for new trial. We affirm.

The evidence at trial revealed the following. Sophia Harper planned to visit Howard in Macon and invited the victim to accompany her. The women intended to return to their Atlanta homes later that evening. After they arrived in Macon, the women made plans to go out with Howard, his roommate and co-defendant Cromartie, and Ken Taylor, who wanted to first shower and change at his home. While they waited for Taylor, Cromartie suggested they play a board game called "sip and strip," which required the players to remove clothing or drink alcohol with the roll of the dice. Harper agreed to play but refused to drink because she was driving. The victim testified that she only agreed to watch. Both Howard and Cromartie consumed alcohol during the game.

After Taylor returned, the victim remained with Howard and Cromartie while Harper and Taylor went to a club. The victim testified that while she waited for Harper's return, Howard began to kiss her and then he picked her up and carried her into a bedroom where he forced her to perform oral sex on him while Cromartie simultane-

---

[1] Howard was indicted on two counts of rape and one count of aggravated sodomy. Cromartie was indicted on one count of rape and one count of aggravated sodomy.

ously raped her. The victim testified that Howard then raped her, left for a while, returned and raped her again. The victim feigned illness and was taken to the bathroom, where she remained until Harper's return. After Harper entered the apartment, she saw Howard walking from a bedroom zipping his pants. When Harper entered the bathroom, the victim was on the floor in a fetal position. Harper retrieved the victim's clothing, helped her dress, and the victim tearfully stated she had been raped. Howard then offered the victim money and asked her not to say anything. After further discussion, the women left and called the police. Eventually, the victim and Harper gave written statements to the police.

Both appellants were represented at trial by the same counsel. Although the appellants' mutual defense was that the victim consented to sex, the doctor who examined her shortly after the incident testified that the condition of her genitalia was consistent with forced sex.

During trial, the court held a hearing pursuant to Uniform Superior Court Rule 31.3 (B) to determine whether to admit the State's evidence of a similar transaction Howard purportedly committed. After hearing the evidence, the court decided to admit the evidence, specifically finding that (1) the purpose of the evidence was to show intent or scheme; (2) the evidence was sufficient to establish that Howard committed the act; and (3) there was a sufficient connection between the similar transaction and the crime charged so that proof of the former tended to prove the latter.

1. Howard argues that the trial court erred by sanctioning the State's discriminatory use of peremptory challenges.

The record shows that during jury selection, the State argued that the defendant used his peremptory challenges to discriminate on the basis of gender. After hearing argument, the court found that each side failed to show gender-neutral reasons for striking one juror and offered the parties the opportunity to move for a mistrial. Neither party did so. The court then seated the jury as chosen, including the jurors it found no gender-neutral reasons for selecting, and Howard did not object.

A party cannot acquiesce in a ruling and then complain of it on appeal. *Watkins v. State*, 206 Ga. App. 701 (4) (426 SE2d 238) (1992). Consequently, Howard waived this argument. *McDonald v. State*, 132 Ga. App. 506 (3) (208 SE2d 376) (1974).

2. Both Howard and Cromartie argue that the trial court erred in admitting similar transaction evidence because the prior rape used as the similar transaction did not result in a conviction and the incidents were not substantially similar. Cromartie also asserts that this similar transaction evidence involving only Howard prejudiced his defense despite limiting instructions to the jury.

The witness who provided the similar transaction evidence testified that Howard raped her in her barracks while she and Howard were stationed at Fort Bragg, North Carolina. The witness stated that Howard had been drinking, and the rape was never prosecuted.

Similar transaction evidence is admissible if, at a hearing pursuant to USCR 31.3 (B), the State affirmatively establishes (1) that the evidence is offered for an appropriate purpose; (2) that the accused committed the prior offense; and (3) there is a sufficient connection between the prior offense and the charged crime such that proof of the former tends to prove the latter. *Williams v. State*, 261 Ga. 640 (2) (b) (409 SE2d 649) (1991). "Evidence of similar crimes has been most liberally extended in cases concerning sex crimes." *Helton v. State*, 217 Ga. App. 691, 692 (1) (b) (458 SE2d 872) (1995). Contrary to appellants' argument, the prior offense need not result in a conviction. *Coalter v. State*, 183 Ga. App. 335 (2) (358 SE2d 894) (1987); *Jones v. State*, 159 Ga. App. 634 (1) (284 SE2d 651) (1981) (no error in admitting evidence of prior rape charge resulting in acquittal).

In this case, the similar transaction witness testified that she and Howard were stationed at the same army base, she met Howard on a previous occasion because he was dating her roommate, she delivered some rented movies to his room at her roommate's request, and he entered her room four times on the evening he raped her. This is sufficient to establish that Howard committed the prior rape, for purposes of the *Williams* criteria.

Furthermore, the connection between the two offenses was sufficiently similar to satisfy *Williams*. The evidence showed that Howard had consumed alcohol prior to committing both offenses and offered alcohol to the victims. Neither victim was a complete stranger, having been introduced to Howard hours before the rapes. In both situations, Howard made sexual advances which were rebuffed, and then he overpowered, but did not strike the women. The trial court also noted similarities in the victims' dress and the time of the rapes. The connecting thread pervading the two offenses is a corresponding course of conduct and intent or bent of mind which is sufficient to justify the admission of the similar transaction evidence. See, e.g., *Cole v. State*, 211 Ga. App. 236 (438 SE2d 694) (1993).[2]

Turning to Cromartie's assertion of prejudice, we find that he waived the issue by failing to move for severance despite his prior knowledge of the similar transaction evidence. *Hooks v. State*, 215 Ga. 869 (3) (114 SE2d 6) (1960). The record shows that trial counsel discussed this issue with Cromartie and urged him to retain separate

---

[2] Because Howard did not challenge the propriety of the State's purpose in seeking the introduction of the similar transaction evidence, we need not analyze that element of the *Williams* criteria.

counsel if he were concerned about being prejudiced by the evidence.

Moreover, the trial court thoroughly instructed the jury that this evidence applied only to Howard. Before its admission, the trial court twice advised the jury that it was only applicable to Howard and had "nothing to do with the case of the State vs. Mr. Cromartie." Again, at the close of trial, the court instructed the jury that the evidence pertained only to Howard. We find these instructions sufficient to prevent prejudice to Cromartie. See, e.g., *Givens v. State*, 184 Ga. App. 498 (1) (361 SE2d 830) (1987).

3. (a) Howard argues that the trial court permitted improper bolstering of the victim's testimony by allowing the State to ask the investigating officer whether he observed any inconsistencies between the victim's testimony and her statement on the night of the rape.

Howard's argument is foreclosed by *Cuzzort v. State*, 254 Ga. 745 (334 SE2d 661) (1985). That case "stands for the proposition that where the veracity of a witness is at issue, and that witness is present at trial, under oath, and subject to cross-examination, the prior consistent out-of-court statement of the witness is admissible." *Edwards v. State*, 255 Ga. 149 (2) (335 SE2d 869) (1985). The record shows that those circumstances were present in the instant case.

(b) Cromartie argues that in asking this question with the knowledge that there were inconsistencies in the victim's statements, the State engaged in prosecutorial misconduct.

It is elementary that the State may not knowingly use false testimony to obtain a conviction, even when the falsity relates solely to the credibility of a witness. *Smith v. Zant*, 250 Ga. 645 (3) (301 SE2d 32) (1983). In his brief, however, Cromartie mentions no specific false testimony or inconsistencies. He simply cites testimony at the motion for new trial in which the investigating officer admitted that at first the victim said nothing about Harper playing "sip and strip" and stripping to her undergarments. But the officer also testified that during subsequent conversations the victim provided that information and he was unsure whether to characterize the statement as inconsistent due to the victim's shaken condition. This minor discrepancy, which was subsequently corrected, simply does not rise to the level of a false statement. Thus, we find no evidence that the State committed misconduct.

4. Howard argues that his counsel rendered ineffective assistance by failing to (1) inform the jury that the victim used a penny as her "sip and strip" game piece; (2) refute medical testimony indicating that the victim's physical condition after the rape was not consistent with consensual sex; (3) move to strike statements by the similar transaction witness that Howard had failed lie detector tests; and (4) adequately investigate and prepare the case for trial. Cromartie appears to argue that trial counsel rendered ineffective assistance due to

(1) inadequate preparation and (2) conflict of interest arising from the admission of the similar transaction evidence.

"When, as here, an appellant asserts more than one error within a single enumeration, this court in its discretion may elect to review none, or one or more, of the errors asserted in the single enumeration." (Citations and punctuation omitted.) *Toledo v. State*, 216 Ga. App. 480, 482 (4) (455 SE2d 595) (1995). Because Howard raised only the second and fourth of these arguments in the context of his ineffective assistance claim in his motion for new trial, we decline to reach the arguments not presented to the trial court. See *Bailey v. State*, 264 Ga. 300 (443 SE2d 836) (1994).

The appellants bear the burden of establishing that their trial counsel's performance was deficient and the deficiency prejudiced their defense to the extent that there was a reasonable probability the result of their trial would have been different but for defense counsel's unprofessional deficiencies. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Brown v. State*, 257 Ga. 277 (2) (a) (357 SE2d 590) (1987). Review of counsel's performance, however, must be highly deferential; tactical decisions amount to ineffective assistance only if so patently unreasonable that no competent attorney would have chosen them. *Rogers v. State*, 195 Ga. App. 446 (2) (394 SE2d 116) (1990); *Kelly v. United States*, 820 F2d 1173, 1176 (11th Cir. 1987), cert. denied, 484 U. S. 966 (108 SC 458, 98 LE2d 398) (1987). See *Hutson v. State*, 216 Ga. App. 100 (10) (453 SE2d 130) (1995).

After a hearing in which defense counsel testified, the trial court determined that the assistance provided was not ineffective. Specifically, it found that the pretrial investigation, which included a review of the State's file on two occasions as well as witness interviews, was adequate. The court also determined that the decision not to engage the services of a medical expert to counter the State's expert's testimony concerning the condition of the victim's sexual organs was tactical in light of what counsel understood the testimony of a treating nurse would be at trial. The nurse testified on cross-examination that the condition of the victim's sexual organs could be consistent with prolonged consensual sex. The trial court's findings are not clearly erroneous and therefore must be upheld. *Garrett v. State*, 196 Ga. App. 872 (1) (397 SE2d 205) (1990). Because Howard failed to establish that his counsel's performance was deficient, we need not address the remaining prong under *Strickland*. See *Rogers*, supra.

As to the conflict of interest issue, the record shows trial counsel informed Cromartie about the possible conflict prior to trial. In addition, the trial court questioned the defendants at length about the issue before jury selection. Cromartie stated to the court he was satisfied that trial counsel could represent both his and Howard's inter-

ests. Under these circumstances, the rule requiring objection to counsel's qualification to represent multiple criminal defendants prior to trial applies. *Hudson v. State*, 250 Ga. 479 (1) (299 SE2d 531) (1983). Accordingly, Cromartie waived this argument.

We turn to Cromartie's unsupported assertion that he received ineffective assistance because trial counsel provided pro bono representation. As discussed above, because Cromartie asserted more than one error in this enumeration, we decline to reach this issue. *Toledo*, supra.

5. Howard argues that the trial court erred in denying his motion for new trial because the jury's impartiality may have been compromised when Harper was arrested following closing argument.

Where a communication with a jury is shown, the State bears the burden of rebutting the presumption of harm. *Owens v. State*, 251 Ga. 313 (9) (305 SE2d 102) (1983). No such presumption arose in this case, however, because there was no communication. The record shows that Harper, a witness who at trial recanted her written statement made just after the rape and testified favorably to Howard, was arrested for giving false statements to officers. The arrest occurred just after the jury began deliberations, when a police officer asked her to step outside the courtroom and served her with the arrest warrants. It is undisputed that she reacted very loudly. However, all the jurors were sequestered at the time and could not have observed the arrest. Absent any evidence that the jury witnessed or heard the commotion, Howard's argument lacks merit.

*Judgment affirmed. Beasley, C. J., and Pope, P. J., concur.*

DECIDED FEBRUARY 20, 1996.

*Bush, Crowley, Leverett & Leggett, Michelle L. Schieber*, for appellant (case no. A95A2218).

Gregory B. Howard, *pro se.*

*Clinton A. Wheeler*, for appellant (case no. A95A2219).

Roderick Cromartie, *pro se.*

*Charles H. Weston, District Attorney, Kimberly S. Shumate, Laura D. Hogue, Assistant District Attorneys*, for appellee.